We'll hear argument this morning in Case 16-784, Merit Management Group v. FTI Consulting. Mr. Walsh. Mr. Chief Justice, and may it please the Court, the relevant transfers in this case are the transfers by and to the financial institutions Credit Suisse and Citizens Bank. We know that because Congress included intermediaries in the safe harbor from the very beginning, focusing on what they do rather than who they are. We know that because Congress used the disjunctive by or to or for the benefit of a financial institution or another institution, which precludes an approach that looks only at the party that has a beneficial interest in the transaction. I'll read them with more care, but the circuits that come out, as you would ask us to, it seems to me focus on the word settlement. And that controls everything. And they don't talk about transfer. Of course there was a transfer in a lay sense, but that's not the transfer here that the trustee seeks to avoid. Your Honor, there was a lot of discussion of whether or not something is a settlement payment in some of the earlier cases. In 2006, Congress added securities contract and commodities contract to the statute. And those are much broader concepts. And so there's much less discussion about whether something is or is not a settlement payment, because frequently it is a transfer in connection with the securities contract. But it is true that the transfer targeted by the plaintiff in this case is the end-to-end transfer between the parties with a beneficial interest. But that is not a distinct or separable or independent transfer from the transfers that made it up, the transfers that the parties contemplated when they entered into this contract. Ginsburg. Mr. Walsh, could you explain? I mean, here we have two parties, Valleyview and Merritt. And you don't claim that either of those is a 546.3 entity, do you? Neither of those is a financial institution, but one of the other institutions named in the statute. That's correct. So now the trustee is alleging that Merritt got money that otherwise would have been available for distribution to creditors. That's the claim. That's the gist of it, yes. So why should it matter whether the transmission was through the banks rather than handed over by Valleyview to Merritt?  Not just to protect particular players in the markets. How is either bank at risk of anything here? Neither bank is at risk of liability in this particular case. But the broader issue is that parties who receive distributions from securities or commodities transactions have a decision to make. Can we safely reinvest in something else? Can we make a distribution to our own investors or the benefits of our pension fund or what have you? Or do we have to create a reserve or do we have to anticipate that there may be litigation that comes along 6-8? I'm sorry. Who's insecure about that, the banks or the person to whom the money was ultimately sent? Investors in general would be insecure about that, Your Honor. Well, I understood that the safe harbor was not intended to protect people involved in financial transactions. That's always a risk whenever you get into a deal that's contingent on any basis. Congress wanted to do that. Why bother even creating the fraudulent transfer provisions to say any contract that any of these people sign in any of these fields is exempt? Well, Your Honor, I agree that anyone engaging in any transaction has some possibility that there could be a claim that would come along later. But Congress has focused here on the securities and commodities markets. Going back to this transfer question. Yes. The fraudulent transfer provision says the trustee may avoid any transfer or any obligation. So it's not talking just about voiding a transfer. It's talking about voiding an obligation. Isn't the contractual obligation an obligation? Or a contractual rights obligation? So why can't the trustee choose what it is he or she wants to avoid, whether it's a transfer or an obligation? And that defined the scope of who's involved. Sure. The reference to obligation in the fraudulent transfer statutes is generally in reference to a debt incurred by the debtor to someone else. And if that debt causes the debtor to become insolvent or inadequately capitalized and the other aspects of the statute are satisfied. I'm sorry. Here a debtor sold something to someone else or was obligated to send money, ultimately to merit. So how does that not fit into obligation? Well, that obligation has been paid already. That application of the statute would normally be in a situation where the. Obligation issue is one that's prospective and not. It typically arises in that context. And also the safe harbor 546E does not apply to obligations. It only applies to transfers. And what you called the end-to-end transfer is the transfer that the trustee is seeking to avoid. Isn't that right? That is right. That's the one that is allegedly constructionally fraudulent. So why shouldn't the exemption provision be applied to the transfer that the trustee is seeking to avoid? Otherwise, is your argument that these intermediate transfers are constructively fraudulent? My argument is not that the intermediate transfers are constructively fraudulent. My argument is that the intermediate transfers can't be separated from the overall end-to-end transfer. And so that by avoiding the overall transfer, the trustee would necessarily be avoiding the intermediate transfers as well. To think of it a different way. So why shouldn't the transfer, why shouldn't the exemption be applied to the transfer that the trustee is seeking to avoid, as opposed to intermediate transfers that can't, that are not constructively fraudulent? Well, I think a useful way to think about it, Your Honor, is that there's only $55 million involved here. And we can say, as a shorthand, now that we know how the transfer played out, because it was 10 years ago, we can say there was a transfer from Valley View to Merritt. But it's not different from the transfer of the same $55 million that Valley View sent to Citizens Bank. And it's not different from the subset of that transfer that Citizens Bank sent to Merritt on two different occasions three years apart. In other words, I understand the trustee's point that I'm only seeking to avoid this broader transfer. But when we have an overriding prohibition like 546e, I don't think it's sufficient simply to say, but that's not what I'm doing. Well, could the trustee, absent 548e, seek to avoid the transfer from Credit Suisse to Citizens Bank? The trustee, absent the safe harbor, could seek to avoid the transfer from Credit Suisse to Citizens Bank. Why was there not adequate consideration for that? It was just a pass-through. I'm not agreeing on that. What would there be to avoid? I'm sorry. I'm not agreeing on the merits. I'm suggesting the trustee could pursue that claim. I do think there was adequate consideration for it, and that claim would fail. But the trustee could seek to pursue it. Your friend on the other side says that your theory would cover the simple use of a check to convey a straightforward purchase and sale if the purchaser pays with a check. Is that correct? Your Honor, not necessarily. And the Court doesn't need to go nearly that far to rule in our favor in this case. The safe harbor goes at least as far as what we have here, where we have an intermediary, a financial institution serving as an intermediary in much the same way that a broker or a clearing agency would serve as an intermediary. I understand that, but I'm concerned about the scope of the rationale that we would adopt. And you say not necessarily. When would it be enough that the purchaser just paid by check? Well, I think — let me address the scope first. I think the scope of checks or wire transfers is actually quite a bit less than my opponent would suggest. The vast majority of transfers in securities and commodities involving public securities in particular are going to clear through the indirect holding system. They're going to clear through paper debits and credits and not with wire transfers or checks. Breyer, I have two shares of Company X in my — I have an account somewhere. Okay? So knowing I'm about to go bankrupt, I take my share and I tell them go transfer it to my wife. Right? Yes. Now, you'll say they can't attack that as a fraudulent conveyance. I'm just trying to think, you know. The paradigm case of a fraudulent conveyance. Well, actually, Your Honor, that very well might be a case that wouldn't fall within the safe harbor. Why not? Because if you transfer your stock to your wife. No, no, no. It's being held in a bank, and I tell the bank to do it. It's being held in the indirect system, and you sell it to your wife. Then in that case, a safe harbor. It does. So this covers — that's, I think, the thrust. This is going to cover all kinds of things. I have another question, which is — and this is just a puzzle. Look, and when they define financial — what we have here is a transfer. We want it to have a — VVD, Valley Downs. See, it wants to give $55 million to a group of people that include the Merit Downs or whatever. Yes. Right? That's what they want to do. Neither of them is financial institutions. But the way they do it is Valley Downs says it's in Credit Suisse, which is, you have the line of credit. You send it to the Citizens Bank, which is the escrow. Correct. So you'd say in real terms it goes from Valley to Merit, but we do it by means of the guy who gives the line of credit, which is a bank, Credit Suisse, and they send it to the escrow agent, which is Citizens Bank. Okay? And so the argument here is because they use these two agents, now suddenly does it fall into the securities, the bank, or the bank exception, the Industrial Savings Bank exception, et cetera, et cetera.   And so why are we hearing this case? For this reason. Now, this is slightly a side issue, but it's very puzzling. I think I should know the answer. When I look up the definition of financial institution, it says that not only is it Credit Suisse and not only is it Citizens Bank, but it is also the customers of each of those financial institutions in an instance where the bank is acting as agent or custodian for a customer. Now, it seems to me that Citizens Bank is acting for agent or custodian of a customer, namely VVD, and it seems to me that Credit Suisse is acting as an agent or custodian for VVD. So why doesn't that cover it? I think that is a fair way to look at it, Your Honor. Breyer. Well, why doesn't that cover it? Why are we dealing with a case which is coming out of something and deciding all kinds of things about banks and my wife if I, you know, where this is absolutely dealt with in a statute under another provision and nobody refers us to that provision and I can't understand why they didn't? What's going on? Your Honor, we did refer to that provision in both of our briefs, if I remember correctly. You may have put it in your briefs, but I mean, why in the lower courts wasn't this just said, look, point to that, judge. This involves a customer of a financial institution, namely VVD, and therefore it's in the exempt area. Point to that. And I want to know why that didn't happen. In your case, you can do it in a sense the way you want, but I mean, where this is just standing out and we're asked to decide a question that I think is fraught with difficulty, I would like to know the answer. I'm afraid I don't have a good answer for why that did not come up earlier. I thought you conceded it. Didn't both parties concede that Valley View is not a financial institution? You just did, in answer to my question. No, I'm sorry. I asked you that with the question that Justice Breyer raised in mind. I asked you specifically, do you agree that neither Valley View nor Merit is an entity enumerated under 546E? I may have misunderstood the difference between the two questions, Your Honor. I think it's the same, but I mean, at some point, you know, if we have two cases involving the Fishing Act, and it involves fishermen, and both parties concede we are fishermen, but in fact what they are is both farmers and have nothing to do with fish. I would say we'd have a problem in this Court about whether we should hear the case. And, Justice Ginsburg, in response to your question, neither of the parties to this case is a financial institution as that term is generally understood. But not as the statute understands it, which uses it to include a customer of a financial institution in circumstances which are present here. That in the rather unusual definition of financial institution, this is a situation in which the banks act as agents. That's an escrow agent. If this was such a standout issue, you must have thought about it, and yet you relegated it to a footnote in your reply brief. I don't know whether it's a standout issue or not, Your Honor, but that is a quirk in the definition of financial institution. That is true. That is true. I think one of the ways to think about what's going on here is whether Congress is protecting particular institutions or whether Congress is protecting transactions. If Congress wanted to protect banks and brokers and clearing agencies from liability, and that was the only purpose of the statute here, that could have been resolved in Section 550, which is a section of the Bankruptcy Code that deals with who has liability if there is a transfer that's avoided. Well, that actually, 550, I think, works very strongly against you, because 550 says the trustee may recover for the benefit of the State the property transferred. So it seems to be talking about who has control and dominion of the property that the trustee is seeking to recover. Well, Your Honor, control and dominion is a test that's been developed by the lower courts. It's not a rationality test to determine whether a party had the beneficial interest in the transaction, such that it's appropriate to impose liability on that party. That's how they've defined it under 550. That is how they've defined it. It's common sense, which is go to who ultimately has control of the property. And the question is, Your Honor, the reason the courts have applied that definition to the term initial transferee is because the party that initially receives a transfer is not necessarily the initial transferee. It's a nonliteral definition of the term initial transferee. Exactly. But the reference I was making to 550 earlier, Your Honor, is to 550C, which is an example of a situation in which Congress perceived that there's a problem, that a transfer may be avoided and certain parties may be liable. And Congress is responsible to say, avoid the transfer all you want, but here is the very limited subset of parties against whom you may recover. That is what the opponent here would like to happen here. That is what they propose is the actual function of 546E, that it only protects banks and brokers and clearing agencies. And Congress didn't do it in 550, which would have accomplished that. There's also the problem here that the statute protects transfers by banks and brokers and clearing agencies and these other parties. And that has nothing to do with protecting the bottom lines of banks and brokers. It has everything to do with protecting transactions. So, for example, if Goldman Sachs were to sell me 100 shares of Berkshire Hathaway stock for $100 apiece, that is a significant hit to the bottom line of Goldman Sachs because the stock is worth many, many times that much. Nevertheless, that is not an avoidable transfer because it's by a broker to me, even though I am not a cog in the financial system. But they're parties to the transaction. They're not acting just as a pass-through agent. But it would also apply, Your Honor, if Goldman Sachs on behalf of one of its clients made that transaction. I probably wouldn't even know whether I was dealing with Goldman Sachs' own balance sheet or whether I was dealing with someone who was trading through Goldman Sachs. But those transfers go outside of the circle of the six entities that are identified in the statute. Nevertheless, a trustee can't get them back. And so that is a significant problem with the notion that all that is going on here is we're trying to protect banks and brokers from liability because if they get hit with liability, there will be a cascade of other banks and brokers that will fail. When we're talking about systemic risk to the financial markets, we're not just talking about banks and brokers going under. If parties aren't willing to provide capital to the financial system or if other parties like private equity funds or pension funds collapse, we have systemic risk to the financial institution as well. Mr. Walsh, can you help me out with what happens to the law of preferences under your interpretation? As you know, trustees can avoid transfers leading up to the bankruptcy that meet certain conditions. And a lot of that would seem to go away, that power would seem to go away under your interpretation if a bank or financial institution is involved. So that a lot of avoidable transactions would become unavoidable all of a sudden. How do we reconcile your interpretation with that apparent difficulty? I'm not sure that there is such a difficulty, Your Honor. A typical preference claim, for example, would be that the debtor repaid a vendor outside of the ordinary course of business. And the pursuit of that claim against the manufacturer of a widget that sold it to the debtor would not obviously implicate the safe harbor here. There are no securities. Well, but often a transfer that's avoidable does involve a financial institution. You'd agree with that, surely. It may, but it does not very often involve securities or commodities. Well, but it could. I mean, why not? Do you have any empirical information on that? I don't have empirical information. I do have the overlap between securities transactions and bankruptcy is very small. There are a million or so bankruptcy cases filed every year. So a triviality we don't need to worry about, even though it's a central feature of the Seventh Circuit's opinion. I wouldn't say it's a triviality, but it's not. There's a lot of talk in the briefs about the exception swallowing the rule. And the rule is a good bit broader, a good bit broader than the exception here, Your Honor. But we don't have any, nobody has any data on that. We're just going on your representation versus your friend's representation otherwise. I suppose that's correct, Your Honor. But the variety of things that are untouched by the safe harbor are significant transactions in real estate, transactions in vehicles. Trustees can avoid liens because they're unperfected. That's not implicated by the safe harbor unless it would happen to be a lien on a security perhaps or on a commodity. And so the overlap here between bankruptcy and security is a relatively confined space. And what Congress has determined is that if you're dealing with constructive fraud, the concerns of the securities and commodities markets prevail. Mr. Walsh. Yes. Could I take you back to Justice Alito's question? Perhaps just put a little bit of a different spin on it. I mean, if you look at 546E, it's clearly an exception to the avoidance power. It says, notwithstanding all these sections which deal with avoidance, the trustee may not avoid the following transfers. So, I mean, it seems odd to read that in any other way than to start with the transfer that the trustee seeks to avoid. Why should we not do that? Why isn't that exactly what the text tells us to do? Will you start with the transfer that the trustee seeks to avoid, and then you ask whether there's a safe harbor that applies to that transfer? I think my first response, Your Honor, is that when we're dealing with a prohibition of that sort, we don't simply look at what the party says it is doing. So if I'm hauled to a visit with a U.S. attorney because I allegedly filled a wetland, it's not a sufficient response for me to say, I didn't fill a wetland, I built a parking lot. We have to look at, well, what did I do in the process of building the parking lot? Did I put a bunch of gravel in a wetland? And if I did, I have a problem, notwithstanding that I characterize my actions in a different way. But a second response is that because these transfers, the way we characterize the different pieces of this transaction as transfers, are integrally interrelated, to say that a trustee can avoid the end-to-end transfer without affecting the others, the intermediate transfers in any way, is just inconsistent with reality. I guess you're asking a court to make a shift in transfers in the middle of the analysis. In other words, first the court has to say whether this is the kind of transfer that the trustee can avoid, and in doing that, the court is looking at what you call the end-to-end transfer. And then all of a sudden, when it comes to the safe harbor, you're saying that the trustee has to flip and look at another transfer entirely. And that seems like a strange thing for a safe harbor to do. I mean, usually what we think is that a safe harbor would shield from avoidance a transfer that's being challenged, rather than a transfer that isn't being challenged. I think the difference between what you're saying and what I'm saying, Your Honor, is that it's not a different transfer entirely. If we were talking about, say, the transfer of the real estate, where the plans were to build the racetrack, then that would be a different transfer. But the transfer of $55 million from Valley View to the escrow agent and the subsequent transfers from the escrow agent to the shareholders of Bedford Downs, they aren't different transfers. They're just different ways of looking at the same transfer. Because they've made up the law. In your hypothetical, if the land were held in escrow for 30 days until everybody got the title, then there would be an exemption. No, because it's not securities or commodities. It's real estate. What about this? It says, a trustee may not avoid a transfer that is a settlement payment made by a financial institution. That's right, isn't it, so far? Yes. Joe Smith buys a piece of property from Bill Brown for $10 million. Joe Smith puts into escrow $10 million. Bank of America is the escrow agent. Brown puts in the deed. When both are there, Bank of America gives each the other. Why hasn't Bank of America given a settlement payment? Your Honor, I don't think the term settlement payment has ever been understood to apply outside securities and commodities and financial transactions. So it is not a settlement payment. It's just it's not a settlement payment, a payment for a real estate transaction. It is a payment for a real estate transaction. That's correct. It is not. It is not a real estate transaction payment. I'm sorry. A settlement payment, as defined in the code, is not a real estate transaction payment. Yes. But if the same thing were true and what they had bought was a 5 million acres of wheat, then it would be. If they bought the crop and it was a forward contract under the code, then the purchase of the crop could very well be covered. Thank you. Unless there are further questions, I would like to reserve the balance of my time. Thank you, counsel. Mr. Clement. Mr. Chief Justice, and may it please the Court. I think it would be helpful if I could start with the elephant in the room, which is Justice Breyer's question about the definition of the financial institution, and then address the question presented. So, Justice Breyer, a couple of points about that. First of all, I think it could not be clearer that that's never been at issue in this case. And even more to the point, the Petitioner, when they were trying to get this Court to take the case, emphasized the fact that this wasn't in dispute as a sort of a positive feature of this petition. So if you look at page 3 of the petition, it is clear that the Petitioner I have no doubt that neither party wanted it resolved on that basis. And so what's nagging at the back of my head is that since it seems so clear, it's like two farmers who decide they have some other financial interest in fishing. And they'd love to have this Court decide the Fishing Act. But in fact, if you look at the Farming Act, you've got the answer to the dispute between them. And can two parties who would just love it if we could decide an issue that really isn't at issue before them, and can they stipulate a way? All of the actual, you know, they stipulate a way, the basic rule that a contract is valid upon signing or something, in order to get us to decide a question. So, Justice Breyer, if you really had the farmer-fisher idea, fisher-person idea, I think what you would do is dismiss the case as improvidently granted, which would serve my client's interest just fine. But I think there are two very good reasons why that issue was not put front and center by my friends here. The first is that it's completely inconsistent with their overall theory of the case. Their overall theory of the case is that every customer of every one of the six protected entities is protected ipso facto by virtue of the fact that it went through one of those entities. So it's more than a little bit of an embarrassment for them to come across a definition that says the customers of one of the six in relatively narrow circumstances are also covered. It's inconsistent with their overall theory. They really can't argue both things. Here's the thing. Kagan Do you think so, Mr. Clement? I'm sorry, if you want to. Clement Well, I was just going to say the second point why they're not making it, which is it doesn't apply here anyways, which is, as I read that provision, it is very narrow, and it protects the customer only when the bank is acting when the bank is acting as an agent or custodian. It doesn't say when the bank has acted or in the past acted. It says when the bank is acting as the custodian or the agent. So if, hypothetically, we had, the trustee had tried to avoid the transfer while the money was still at Citizens Bank, then maybe, just maybe, we'd still probably want to have a debate and actually look at, you know, and talk about what agent means in this context. But then maybe it applies. And maybe it applies for a reason, then, which is, in that context, maybe Citizens Bank is actually inconvenienced by this. But this is why I think that I really disagree with my friend when he says that the transfer the trustee sought to avoid and the underlying transfers are sort of indivisible. Think about what happens if we prevail in this case, given the transfer that the trustee sought to avoid. If we prevail at the end of the day, Merit owes the estate some $16 million. Citizens Bank doesn't have to do a thing. Credit Suisse doesn't have to do a thing. If they want to wire the money, they can pick one of those banks, and one of those banks will actually benefit to the extent of the wire transfer fee. But there's no obligation to do that. They could pick Bank of America instead. It is not as if they win here that the poor folks at Citizens Bank need to go and sort of unearth that escrow agreement and reverse something on it. They don't have to do a thing. Which, of course, explains whether or not here is amici. Roberts. Well, it's not that simple. I mean, this is not simply – I think you try to portray it. It's simply a matter of conduits that don't have anything to do with it. But as I understand it, the intermediaries had a lot to do. This – they were there functioning as intermediaries for several years. They had certain compliance obligations to check. There were going to be payments in this event, but no payments in that event. They were seriously involved. They weren't just, you know, stamping the papers and moving the money. You're right, Mr. Chief Justice, to a degree. But for whatever the sort of exertion they did, they were compensated, and the trustee is not trying to get that compensation back. I mean, if you can imagine this case, when the wire transfer went from Credit Suisse, the money went to Citizens and then eventually to Merit. I assume Credit Suisse got paid, I don't know, $1,000 to do that transfer. Now, if the trustee here thought, you know, this whole thing is such a bunch of baloney that we should get the money back from Merit, and we shouldn't have had to pay that $1,000 to Credit Suisse, so I have a theory as the trustee as to why I can avoid the transfer to Credit Suisse, well, of course that's covered by 546e through the straightforward way we think the statute should be read, which is this affirmative defense, this exception, this safe harbor talks about a transfer that the trustee may not avoid. It then cross-references five sections of the statute, each one of which uses the word may avoid. It describes a transfer that the trustee may avoid. It just seems like these provisions, they're all these textual interrelationships between the two provisions, such that it seems perfectly natural to say that when you're applying 546e, you look at the transfer that the trustee is seeking to avoid. Roberts. What if the trustee – would there be situations in which it would make sense for the trustee to want to avoid one of the intermediary transfers rather than simply the ultimate one? It might. But they probably run into 546e. I mean, which is to say you can imagine a situation where you really thought that, you know, the money stopped at one of those banks, and so the ultimate transferee, the right person to bring the action against was the bank. Or if the bank's trading on its own account or something, I think in that situation and, you know, you'd have a transfer where the transfer that the trustee was bringing under 544, 545, all those various provisions, the transfer you're seeking to avoid was a transfer to a bank. Well, would it be in a situation where there's no money with the ultimate seller to recover? They've also become bankrupt? Credit Suisse is not bankrupt? Right. No. Look, in that situation, an aggressive trustee might seek to avoid a transfer to the bank. But in that situation, 546e stops that in its tracks. And I think it's also important to remember that 546e is added at a point where you already have limitations as to which transferee you can recover from. And part of what Congress is worried about is the idea that in some situations and maybe the ones that we were talking about in this kind of hypothetical, it would actually be tough to figure out whether or not the financial intermediary really was just a conduit, in which case they'd be protected under preexisting law, or whether they sort of ended up with the money when the music stopped. And what Congress tried to do in 546e was to provide a nice bright-line rule that protects these intermediaries. And it seems like it is consistent with both the general interest and the bright-line nature of the rule to say, this is relatively straightforward. Let's look at the transfer the trustee is seeking to avoid. If the trustee is seeking to avoid a transfer that is by, to, or for the benefit of one of these six entities, that's it. Motion to dismiss. Kagan, does that mean, Mr. Clement, that all we do as we look at the trustee's complaint, we leave it to him to decide the question? Clement, yes, Justice Kagan. But I think the reason that that doesn't create some sort of mischief here is that in making that the complaint, the affirmative part of the complaint, the trustee isn't just sort of free to pick transfers at random that he or she seeks to invalidate. They have to come up with a transfer that fits the terms and the requirements of one of those provisions of the code in Chapter 5. So that might be right. I was trying to think of cases in which there could be mischief by relying entirely on the trustee's power to define the transfer. And here's what I came up with, is that there truly is a transfer from a debtor to a bank. The bank's not serving as an intermediary. It is a real transfer of stock, right? And now 546E is going to prevent the trustee from avoiding that. But then the trustee says, so in order to get around 546E, I'm going to define the transfer differently. I'm going to ask where the bank then transferred the stock and say that the transfer that I want to avoid is from the original debtor to whoever it was that the bank transferred the stock to, even though those really were two separate transactions. Could the trustee play games like that? I don't think they could. I mean, they could try, but I don't think they would get away with it. And I think that in any case where the trustee brings an action against somebody, they're going to have essentially two kinds of defenses to raise. One is going to be an affirmative defense based on 546E. Now, it may be in your hypothetical, the trustee's kind of played around that. But you still have to, the trustee still has to essentially satisfy the terms of the original avoidance provision. And I don't think for purposes of that hypothetical, though it might depend on some details of it, that the trustee would be able to do that. And then, of course, there's a second piece of this, which is to make this in a transfer situation, to really get any juice for the effort, you have to not only avoid the transfer, but you also have to get recovery under 550. And in the hypothetical that you're talking about, the third party, subsequent transferee, would not be the immediate, the initial transferee under 550. And so as long as they took it in good faith and paid value for it, they'd be completely protected. So I just don't think it would work. And I think it is important to recognize that this is not a situation where the trustee can just sort of pick the, well, today I feel like the Credit Suisse to Citizens Bank transfer is the one I'm going after. They have to satisfy it. If we're writing the opinion to accept your proposition, how do we qualify it? Do we say that this does not apply to transfers where the settlement institution does not have an equity participation? I mean, what? See, I wouldn't do that, Justice Kennedy. I think that is the way some of the courts have written it. But I think the simpler way to write the opinion is to say, to apply 546e, just look to the transfer that the trustee seeks to avoid, and it's as simple as that. If the transfer that the trustee seeks to avoid the transfer that the trustee seeks to avoid. Kennedy, but that then involves Justice Kagan's concern that you're giving the trustee a chance to define the transfer in a particular way. Now, if the Bankruptcy Code defines a transfer so it's abundantly clear what transfer is involved, then that's one thing. But I tried to be responsive to Justice Kagan's question, and I think the Code puts all sorts of limits on the trustee when they're picking the transfer that they're seeking to avoid. So, for example, for certain provisions of the Code, you can only avoid a transfer at a certain time period if it's a transfer to an insider. Now, that seems to me to buttress the idea that that provision of the Code doesn't really care much about the intermediaries, because otherwise you could say, well, there's never a transfer to the insider because it always goes through a bank first. So I think the trustee is disciplined not just by 546e, but by the various things that the trustee has to show to qualify the particular transfer for being avoidable under one of the affirmative avoidance powers. Kagan. What do you think is wrong, Mr. Clement, with the alternative approach? If I understand the alternative approach, which Justice Kennedy was referring to, it's more of a functional analysis. You ask who has dominion and control of a particular piece of property at a particular point, and that seems more what the Seventh Circuit was doing than what your brief suggests. So why do you think that that's a worse alternative than the one you're suggesting? Clement. Well, Justice Kagan, let me start by saying it's a lot better alternative than my client losing this case. So if you find that attractive, I mean, that's fine. Here's the reason, though, that honestly I don't think it's right, because I think one point my friend and I agree on is that when Congress was passing the predecessor to 546e back in the day, there was already substantial protection for the intermediaries under the recovery provision, 550, if they were truly conduits and weren't the beneficial owners. And so I think what Congress was trying to do with 546e was to provide an alternative, more bright-line way for the financial intermediaries to get out of the case early at the motion-to-dismiss stage. And the problem with this looking for the beneficial ownership is it's really the same inquiry, and it could be fact-specific in a particular case, that Congress was trying to supplement with this bright-line rule. And we think our rule gives a nice bright-line rule that courts can apply at the motion-to-dismiss stage. Literally, just look at the complaint, look at the transfer, the trustees seeking to avoid, and then if it satisfies 546e, you know, you're done, trustee loses. If it doesn't, we move forward. Of course, when you move forward, you can still get into this beneficial interest inquiry as part of the 550 inquiry, because here, as in almost every case, there's a difference. Ginsburg. How do you answer what your colleague stressed? That is, it doesn't say for the only, for the benefit of a financial institution. It says, by, if a transfer is by a financial, that's enough. You're right, Justice Ginsburg, and we think that's right, but we think what Congress was addressing in that situation was the precise situation that the Southern District of New York dealt with in a case called Seligson, which I think both parties agree is the case that Congress was trying to address with the predecessor to 546e. And that was a situation where the financial intermediary, there I believe it was a commodity broker, is the bankrupt. And so, and so in that situation, you do want to protect and shield the transfers by the bankrupt, because the one thing Congress was clearly concerned with is you'd have a bankruptcy by one of the hub players in the financial industry, and that would create this sort of ripple effect to everybody who dealt with them. Breyer. So for this provision, do I have this right? A, look to the transaction that the trustee is trying to set aside as a preference or fraudulent conveyance. B, ask the question, who is the person who directed that that transfer be made? All right? If it's a financial institution, et cetera, stop right there, good-bye, you're out. If not, continue to question 3. And question 3 is, who is the initial transferee and not a conduit of that transfer? And if the answer is a financial institution, you're out, and otherwise we go on to ask the other questions. And that means that a con — the transferee, the initial transferee, if he's receiving money that he is to hold for the benefit of the other, he still is the initial transferee, and you will look to such matters as to who this money is to benefit later on in your efforts. Is that right? Well, Justice Breyer, I think you've aptly captured the Seventh Circuit's reasoning. I'm actually asking you to make this case even simpler. I'm asking you to look at the transfer that the trustee seeks to avoid that has to be by somebody and to somebody in order for it to satisfy 544, 545, 547, or the two provisions of 548, that 546E cross-reference. So there you have, right on the face of the complaint, a transfer by someone, to someone, or for the benefit of someone. Because as we explained in the brief, the reason that language is there is because the avoidance power is not limited to transfers to somebody who's like an insider or a creditor, but also to somebody who is for the benefit of a creditor or an insider. So just look at the face of the complaint. Apply 546E to the transfer that the trustee has put at issue. And if the terms are satisfied, then the trustee loses. And if the terms are not satisfied, then you move forward and you probably analyze all of those transferee questions before the case is all over. But I do think it's more faithful to what Congress was trying to accomplish when it enacted the predecessor to 546E to have a nice, bright-line protection that's there for the financial intermediaries. It doesn't protect all of their customers. It doesn't protect merit. They have other arguments they can eventually make. But what they wanted was a nice, bright-line rule, so clearing agencies, commodity brokers, and then eventually stockbrokers and financial institutions and financial participants would all have a nice, clean motion-to-dismiss argument to win their case. Sotomayor, may I address a question that confused me in your briefing? You kept saying that the initial transfer had to be by the debtor. But the code permits the trustee to void a non-debtor's transfer if the property that the non-debtor is transferring is of an interest of the debtor in property. So it's not so clean to say that the transfer has to be by the debtor. It can also be by the debtor's agent, a non-debtor. Justice Sotomayor, I think you're right that it's certainly not clean. Now, I think at the end of the day we're actually right, and I get some solace from the fact that our position is supported by Professor Brubaker, who spent a lot more time looking at the code than I have. So I think we're actually right that even when it's a transfer by a third party of an interest of the debtor, it actually ends up, for purposes of the code, being a transfer made by, which I think is the relevant term, made by the debtor. So that's how you're reading that non-debtor? That's how we're reading it. But I want to make it as clear as I can that nothing turns on that. Our position, I think it makes, if you accept that, it makes our position that much clearer, but nothing turns on it. And I think what that just helps to show is that either in 100 percent of the cases or the vast majority of the cases, that when you get to transfer by, either for purposes of the avoidance power or for purposes of the exception of 546E, it's going to be a transfer by the bankrupt. And whether it's 99 or 100 percent, nothing ultimately turns on it. Sotomayor, but why then did you argue that the transfer from Credit Suisse to Citizens Bank both involved property of the debtor? Why did you argue that that wouldn't qualify because it wasn't a transfer by the debtor? Because the way we read Chapter 5 of the code is it essentially ignores conduits for purposes of identifying who's the transferor and who's the transferee. And we do think that's consistent throughout Chapter 5. That's why first of all you don't think Credit Suisse or Citizens Bank fell under the safe harbor automatically? They're both financial. I think if the trustee had tried to avoid that transfer, it would automatically satisfy 546E. What I'm making, though, is the point that I don't think properly understood that is even a transfer by Credit Suisse. And I think maybe the way to try to at least understand the point I'm making, but it's about the charitable giving exception. Now, it allows, it exempts certain transfers by the debtor to a qualifying charitable institution. Now, I would think the vast majority of those are made by telling your bank, I want to give $2,000 to this charity. Now, if you accept their view that you subdivide everything, well, then that's not a transfer by the debtor to the charity, it's a transfer by the debtor to Credit Suisse, which is not a charity, and then a transfer by Credit Suisse to the charity. And that doesn't come within the exception to the power, which is nonsense. That's clearly not what Congress was trying. But, Mr. Clement, on that, I assume your friend will get up and say, well, a lot of those charitable contributions are by check and those aren't covered. And just as we heard when I asked the question about avoidable transfers, that it became an empirical debate about how many of those would be covered. So how clean a line is this, really, what you're suggesting? Well, two things, Justice Gorsuch. First of all, my friend would want to tell you that the checks aren't covered. But with all due respect, I don't think he has a theory as to why. And I think that's what's critical. I mean, you know, if there's no word in that statute that allows you to draw that distinction, as the colloquy with Justice Breyer showed, there might be a theory based on the definition of financial institution, why the escrow situation is different from the check situation. But if he's right, and all you have to do is have any kind of transfer, and we don't ignore any transfers by or to a financial institution, I don't think he's offered you a theory for why checks don't count. So that would be the first point. The second point would be, yeah, there's some empirical debates here we don't know the answers to. But if we're looking for a clean answer, I mean, I think both sides are giving you a clean answer. They're basically giving you an answer that says, if it's a settlement payment or a margin payment or a payment in connection with a securities contract, unless there's, like, the one person out there that's doing these things with bags of cash, it's covered. We're giving you the clean position that this is a clean position, right, that we need a transferee under the statute and a debtor under the statute. I read the red brief as being a little more equivocal on that. Maybe I misread it. Do you endorse the amici's clean position without qualification? Well, we think our position is even cleaner. I mean, so we think if you're referring to Professor Brubaker's, we think we get to the exact same place. I think maybe since I'm coming at this more like a lawyer instead of a bankruptcy professor, I think about it in really simple terms. And it maps on to the procedural history of this case. The trustee here brought a complaint. It was a complaint that identified a transfer for avoidance. The merit filed an answer with an affirmative defense. The affirmative defense was based on 546E. It just seems logical, as Justice Kagan suggested, albeit in a question, so she might not have meant it. But as Justice Kagan suggested, like, what world do you look at different transfers for purposes of the exception or the affirmative defense than the transfer that you're looking at for the prima facie case of avoidance in the first instance? It seems like the statutes work together very well hand in glove. And we haven't talked a lot about the policy implications of their clean position, which is that sort of as long as there was a bank anywhere involved in a securities transaction, it's exempted. And the consequences of that are really quite simple and quite striking, which is in a case like this, where otherwise the unsecured creditors are going to get 15 cents on the dollar, which is already enough to ruin your whole day. All right. All right. But the Second Circuit is very concerned about the effect that this would have on the leveraged buyout industry and therefore the economy more broadly. I can understand an argument that Congress in 1978 wasn't much concerned about the leveraged buyout industry because it didn't exist as we now know it. But what else do you say in response to that, the parade of horribles that we've heard? Well, I mean, I don't actually think it's much of a parade of horribles, Your Honor, but let me try to be as responsive as I can. Which is to say, I think if Congress were really concerned about the leveraged buyout situation, it would have written a very different exemption than the one that it wrote here. It might have defined something like leveraged buyout. It might have exempted certain smaller ones or larger ones. You know, when you have this provision applied in the context of a very large transaction on the public markets, there are lots of the trustees' prima facie case, including that there wasn't sufficient value provided and the like, those are going to be relatively difficult to prove. I mean, at least if you believe in sort of the efficiencies of markets. But when you have leveraged buyouts for small companies, I mean, that is a fertile ground for essentially getting money out of the company and away from unsecured creditors and to some favored party. So as the trustees' amicus brief said, to sort of carve out, you know, leveraged buyouts from the fraudulent avoidance laws, that's carving out a lot because these are transactions where there is a risk that's quite considerable to molting the interest of the unsecured creditors. The last thing I'll say before I sit down is just in addition to all the other textual arguments we make in the brief, I do think it's worth emphasizing that under their view of the statute, Congress's effort in 2005 to add financial participants as the sixth on the list of protected entities was completely superfluous and just a fool's errand, because I can't imagine that financial participants who are defined as entities with $100 million or $1 billion in transactions were doing those transactions with cash. So those financial participants were already customers of these five entities, so if that's enough to bring you into the statute, Congress was utterly wasting its time in 2005. Kagan. May I ask, Mr. Clement, you might have no insight on this, and you might not be able to say anything about it, so if so, just say so. But it is curious to me, I've never seen a bankruptcy case, maybe ever, but certainly a bankruptcy case like this one in which we do not have a Solicitor General brief. Do you have any thoughts about why the SG didn't file here? No, I don't have any particular thoughts other than I do think that if what we were urging on you was really a catastrophe for the markets or something else, boy, I sure think the SG would be here waving at least a yellow flag. To me, the amici that aren't here that speak even louder, though, are frankly the lack of financial institution, stockbroker, clearing agency amici. I mean, look, normally I don't think you really draw any inference from the amici that aren't here, but if you told me that, wow, there's this provision that's in the code that's specifically designed to protect your interests, and the Seventh Circuit adopted a narrow construction of it, and it's going up to the Supreme Court of the United States, and they will decide the scope of this exemption that protects your view as much as the Petitioner's view, I would think it would be worth your while to file an amicus brief. And the fact that they're not here, I think, underscores that the entities that Congress was trying to protect are fully protected by our view, and they're fully protected by the Petitioner's view. It's just so is the rest of the world. And I just don't think there's any view that Congress actually intended to not just protect those six financial entities, but to protect everybody else who essentially transacted in them in connection with the securities contract. So we think the decision below should be affirmed. Thank you. Thank you, counsel. Four minutes. Mr. Walsh. Thank you. I'd like to return to Justice Kagan's question a little bit earlier about whether we can focus solely on the transfer as the trustee identifies and characterizes it. And I think it's useful to think about what happens if that end-to-end transfer in this case is avoided, and some amount of that would have to be refunded by merit. I think the question we'd have to ask is then, so what of the transfers from Citizens Bank out of escrow to merit? Can we say that those transfers are still valid and in effect and have been consummated and have been paid, and Citizens has satisfied its obligations because merit has the $16.5 million? And I think the answer to all those questions is no. Because once the broader transfer is avoided and a recovery is made, everything else falls with it as well. So when we say the trustee — Sorry. I thought 550 said that post — that transferees from Bedford could be protected by other safe havens. If they paid consideration and in good faith, et cetera, they would be okay. No, that's right. If — well, Bedford didn't receive the transfer, Your Honor. The shareholders of Bedford, including my client, received the transfer. If they had transferred it on — Right. And that's what we were talking about, the good faith defense would come into play. But what I'm talking about is the transfers from citizens out of escrow to the shareholders. If the broader transfer is avoided and a recovery is had against merit, then those transfers into and out of escrow involving financial institutions are not in full force and effect. So what? I mean, if I write a check and it goes to the postman and the postman delivers it to Smith and I get my money back from Smith, then I guess you could say, well, the mailbox didn't have any financial effect. So what? So the so what, Your Honor, is that when the trustee says, I'm only seeking to avoid the one transfer — Well, that is only trying to avoid — And the rest can be disregarded. Well, no, but I mean, it has no effect. FedEx, you know, delivered the check. I mean, there are many ways of delivering the check. If they're just to conduit the bank, it's quite true in a sense that transfer from the bank didn't have any effect because the people who got the money had to give it back to the people who deposited the money. But my question was, so what? The so what is that the statute says the trustee may not avoid transfer by a financial institution. And so by avoiding the transfer, the broader transfer — And there's no consequence to Citizens Bank, is there? It would not hit Citizens' bottom line. That's correct. No consequence. That's correct. Okay. I do want to talk about consequences, though, because this is a case involving $16.5 million. As the Court is aware, both sides in the Tribune case have filed amicus briefs. That case is, let's call it, 100 times larger than ours. It's more than that. And the issue there — and Justice Gorsuch mentioned the Second Circuit's opinion, which is justifiably concerned about what happens, but there are thousands of defendants in that case. Of course, if Goldman Sachs or Merrill Lynch received a distribution in that case for its own account, they don't have liability. That transfer can't be avoided. I think everybody would agree about that. But there are employees who held company stock. There are pension funds that held stock in Tribune. All these other entities remain exposed. Over the past 30 years, Congress has expanded and expanded and expanded the safe harbor to bolt on different concepts, including financial institutions. At the same time, the Courts, with a few exceptions, have been interpreting the statute broadly. And if Congress thought that the Courts were out of line, it could very well have cut the statute back. It didn't do that. The statute has continued to expand, and it's important. And one last point. Mr. Clement mentioned the Seligson case and what Congress was — I'm sorry. JUSTICE SCALIA. You can finish your point. The notion that transfers by an institution are protected by the safe harbor covers a good bit more than transfers by an institution into the clearing system. The example I gave before, where Goldman Sachs transferred me a bunch of Berkshire Hathaway stock for a nominal amount of money, is covered as well. So it's broader than Seligson. CHIEF JUSTICE ROBERTS. Thank you, counsel. The case is submitted.